NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JOSHUA THOMAS BARLOW, *Appellant.*

Nos. 1 CA-CR 15-0541, 1 CA-CR 15-0546 (Consolidated)
FILED 9-1-2016
AMENDED PER ORDER FILED 9-1-16

Appeal from the Superior Court in Maricopa County
No. CR2014-161382-001 and CR2013-458563-001
The Honorable Rosa Mroz, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Christopher V. Johns
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Chief Judge Michael J. Brown and Judge Kenton D. Jones joined.

_____

**G O U L D, Judge**:

¶1 Joshua Thomas Barlow appeals his convictions and sentences in these consolidated cases. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶2 A grand jury indicted Barlow on one count of aggravated assault, a class three dangerous felony, and one count of misconduct involving weapons, a class four felony.[1] The court severed trial of the aggravated assault and misconduct involving weapons charges, and ordered that Barlow stand trial first on the aggravated assault charge.

¶3 The evidence presented at trial showed that a witness observed both Barlow and the victim in a bar before the stabbing.[2] The witness watched Barlow leave the bar with the victim around midnight while she was walking across the street to her car. Then, from about 50 yards away, she saw Barlow "hitting" the victim several times under a streetlight. When the victim fell to the ground and Barlow fled from the scene, she rushed over to help; at that point, she realized the victim had been stabbed. The witness later identified Barlow to the police as the individual who assaulted the victim; at trial, she stated she was "150 percent certain" of her identification.

¶4 Barlow was stopped while he was fleeing from the scene by security officers in a nearby apartment complex. A switchblade knife was recovered from Barlow's back pocket. There was also blood on Barlow's right hand and on the knife blade.

_____

[1] Maricopa County Superior Court Case No. CR2014-161382-001.

[2] We view the evidence in the light most favorable to supporting Barlow's aggravated assault conviction. *State v. Boozer*, 221 Ariz. 601, 601, ¶ 2 (App. 2009).

**¶5**          The victim testified that he had drunk a lot of alcohol that night, and did not remember who had stabbed him or what the person looked like.

**¶6**          At the conclusion of the guilt phase of the trial, the jury found Barlow guilty of aggravated assault. Then, following the aggravation phase of the trial, the jury found the existence of two aggravating circumstances: (1) Barlow was on probation at the time he committed the aggravated assault,[3] and (2) Barlow caused physical, emotional, or financial harm to the victim. Barlow entered a plea of no contest to the remaining charge of misconduct involving weapons.

**¶7**          Based on the guilty verdict, the court determined that Barlow was automatically in violation of his probation in his prior case. The court revoked his probation and sentenced him to concurrent presumptive terms of one year on each count with credit for 243 days' time served, and designated both offenses as class six felonies.

**¶8**          In Barlow's new case, the court imposed presumptive sentences of 7.5 years for the aggravated assault conviction and 2.5 years for the misconduct involving weapons conviction, to be served concurrently with each other, but consecutive to the sentences for the probation violation. Barlow filed timely appeals of the probation revocation, and the convictions and sentences. This court ordered consolidation of the appeals.

II.     **DISCUSSION**

     A.     **Aggravation Hearing**

**¶9**          Barlow argues he was unfairly prejudiced at the aggravation hearing because the State was permitted to introduce evidence of the nature of the offenses for which he was on probation. Specifically, Barlow claims the State should have been limited to showing that he was on probation at the time he committed the aggravated assault, and should not have been allowed to show that he was on probation for aggravated assault and possession of burglary tools.

**¶10**          Before opening statements at the aggravation trial, Barlow asked the court to bifurcate the trial. Barlow argued that a bifurcated trial

---

[3]     Barlow was on probation for attempted aggravated assault and possession of burglary tools, both undesignated felonies, in Maricopa County Superior Court Case No. CR2013-458563-001.

was warranted to prevent any prejudice he might suffer from the jury learning he was on probation before considering the aggravating circumstance of emotional, physical, or financial harm to the victim. The court denied the request. Following submission of the verdict forms to the jury, Barlow asked for a mistrial on the same grounds. The court also denied the mistrial, noting it had "already ruled on the issue." We review a trial court's ruling on the admissibility of prior convictions for abuse of discretion. *State v. Green*, 200 Ariz. 496, 498, ¶ 7 (2003).

¶11         The court did not abuse its discretion in denying Barlow's request to bifurcate the aggravation trial. Criminal Procedure Rule 19.1(b) does not require that a post-conviction trial on a defendant's probation status be bifurcated from a post-conviction trial on aggravating circumstances. *See* Ariz. R. Crim. P. 19.1(b) (providing generally that no reference to prior offenses or sentencing allegations be made at trial of the charged offense). The policy behind Rule 19.1(b) — "to prevent the jury from being swayed by knowledge of past convictions when deciding the defendant's guilt or innocence of the present charge"[4] — has no applicability to a post-conviction determination of probation status and aggravating circumstances. *See State v. Gilbert*, 119 Ariz. 384, 385 (1978) ("The defendant does not, however, suffer this same prejudice when a jury is determining the truth or falsity of a prior conviction after the conviction of the defendant for the offense charged.").

¶12         Moreover, any error in refusing to bifurcate was necessarily harmless. To demonstrate that an error was harmless, the state must prove beyond a reasonable doubt that the error in admitting the evidence "did not contribute to or affect the verdict or sentence." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005).

¶13         Here, the record clearly shows that Barlow was on probation at the time of the instant offense; Barlow does not contest this fact on appeal. Moreover, the court sentenced Barlow to a presumptive sentence, the minimum sentence it could impose under A.R.S. § 13-708 as a result of the jury finding he committed the instant offense while on probation. Under these circumstances, any error in refusing to bifurcate the post-conviction hearing was necessarily harmless.

¶14         Nor did the court reversibly err by failing to *sua sponte* sanitize the offenses for which Barlow was on probation. Because Barlow did not ask the court to sanitize the offenses, and raises this claim of error for the

---

4         *State ex rel McDougall v. Mun. Court,* 160 Ariz. 324, 326 (App. 1989) (internal citation omitted).

first time on appeal, we review his claim for fundamental error only. *See Henderson*, 210 Ariz. at 568, ¶ 22. On fundamental error review, Barlow has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *Id.* at ¶ 20. To prove prejudice, Barlow must show that a reasonable jury or judge could have reached a different result absent the error. *Id.* at ¶ 27.

**¶15** Barlow has failed to meet his burden on fundamental error review, because he has failed to show the necessary prejudice. Again, the court sentenced Barlow to a presumptive sentence for his convictions, the minimum sentence it could impose under A.R.S. § 13-708 based on the jury determination he was on probation at the time of the instant offense. *See, supra*, ¶ 13. He argues only that the jury's finding that he was on probation was unfairly prejudiced by admission of the nature of the offenses for which he was on probation. This claim of prejudice is based on speculation, an insufficient basis to establish prejudice on fundamental error review. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006).

**¶16** At sentencing, the court stated Barlow was eligible for early release; the court failed to expressly state Barlow's sentences were flat-time sentences. Specifically, the State alleged, and the jury found, that he committed his offenses while on probation for another felony conviction. As a result, pursuant to A.R.S. § 13-708(A), Barlow was required to serve flat-time sentences, as opposed to being eligible for early release on community supervision. *See* A.R.S. § 41-1604.07(A). However, because the State has not filed an appeal or a cross-appeal on this issue, we do not have jurisdiction to address it. *See State v. Dawson*, 164 Ariz. 278, 286 (1990).

## B. Eyewitness-identification Instruction

**¶17** Barlow argues that the eyewitness-identification jury instruction violated his due process right to a fair trial because it included a "witness's certainty" prong that scientific studies have shown has no bearing on accuracy, and thus misled the jury.[5]

---

[5] In Appendix II, Barlow submits a list of books and articles regarding studies on the reliability of eyewitness identification and "witness certainty." Because these sources were never presented to the trial court, we grant the State's motion to strike Appendix II. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (the argument section of a brief must include "citations to the authorities, statutes and parts of the record relied on"); *State v. Schackart*, 190 Ariz. 238, 247 (1997) (an appellate court cannot consider "materials that are outside the record on appeal" because it "does not act as a fact-finder.").

¶18        The witness's level of certainty at the time of the identification is one of five factors outlined in *Neil v. Biggers*, 409 U.S. 188 (1972) and used by Arizona courts and given to the jury in the standard Arizona jury instruction to determine the reliability of an eyewitness identification. *See Biggers*, 409 U.S. at 199-200; *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *State v. Williams*, 144 Ariz. 433, 440 (1985) (reciting the *Biggers* factors as those to "be examined in determining reliability" of a suggestive identification); *State v. Goudeau*, 239 Ariz. 421, 454, ¶ 132 (2016) (same); *State v. Dessureault*, 104 Ariz. 380, 384 (1969) (requiring an identification instruction upon request when court has found pretrial procedure was unduly suggestive, but proposed in-court identification was nevertheless reliable); State Bar of Arizona, RAJI Std. Crim. 39 (Identification) (2013).

¶19        Here, the eyewitness identified Barlow shortly after the stabbing when a police officer drove her to a nearby apartment complex and shone a spotlight on a handcuffed Barlow. She again identified him at trial. Following an evidentiary hearing, the court ruled that the pretrial identification procedure was inherently suggestive, but that the identification was nevertheless reliable and admissible at trial, and did not taint any in-court identification. The eyewitness testified at trial that she was "150 percent certain" of her identification.

¶20        Defense counsel objected below, and argues on appeal, that the "witness's level of certainty" should have been omitted from the jury instruction as a factor in evaluating the reliability of an eyewitness identification, because scientific evidence has shown that "the eyewitness'[s] confidence does not correlate to whether the offense occurred or not, is not a relevant consideration." The court overruled Barlow's objection, reasoning, "I am going to be following the law. And the law as it stands right now is that those are the factors the jury has to consider, and so that will stay in the jury instructions."

¶21        The court accordingly gave the jury the standard instruction on the reliability of an eyewitness identification, including the objected-to fourth prong addressing the "witness's level of certainty at the time of the pretrial identification" as follows:

> Identification. The state must prove beyond a reasonable doubt that the in-court identification of the defendant at this trial is reliable. In determining whether this in-court identification is reliable, you may consider such things as: One, the witness'[s] opportunity to view at the time of the crime; two, the witness'[s] degree of attention at the time of the crime; three, the accuracy of any descriptions the witness

made prior to the pretrial identification; four, the witness'[s] level of certainty at the time of the pretrial identification; five, the time between the crime and the pretrial identification; six, any other factor that affects the reliability of the identification.

If you determine that the in-court identification of the defendant at this trial is not reliable, then you must not consider that identification.

*See* State Bar of Arizona, RAJI Std. Crim. 39 (2013).

**¶22** We review the adequacy of jury instructions in their entirety to determine if they accurately reflect the law. *State v. Hoskins,* 199 Ariz. 127, 145, ¶ 75 (2000). We review *de novo* whether the given instruction correctly states the law. *State v. Solis*, 236 Ariz. 285, 286, ¶ 6 (App. 2014). The instructions must not mislead the jury. *State v. Noriega,* 187 Ariz. 282, 284 (App. 1996). "Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions." *State v. Bruggeman,* 161 Ariz. 508, 510 (App. 1989).

**¶23** The trial court did not err in refusing Barlow's request to eliminate one of the *Biggers* factors, the witness's certainty, from the standard jury instruction on eyewitness identification testimony. The instruction given adequately and accurately set forth the applicable law. *See Williams*, 144 Ariz. at 440 (reciting the *Biggers* factors as "[t]he test for determining whether a suggestive identification is otherwise reliable and admissible.") On appeal, Barlow does not argue the instruction fails to accurately state the governing law; rather, he argues only that scientific studies have shown that this factor has no bearing on the reliability of the identification. However, no Arizona case has approved, much less required, modification of the standard identification instruction in this manner. The trial court accordingly did not err in denying Barlow's request to modify the instruction.

**¶24** Additionally, Barlow had ample opportunity to highlight the hazards of eyewitness-identification evidence, by exercising his right to confront the witness and to appeal to the jury's common sense in evaluating credibility. Barlow's trial counsel did not ask the court to allow him to present expert testimony on the alleged weaknesses of eyewitness-identification evidence. *See State v. Chapple*, 135 Ariz. 281, 293-98 (1983), *superseded on other grounds by* A.R.S. § 13–756. Barlow's counsel did, however, vigorously cross-examine the witness who identified Barlow as the assailant, highlighting the potential weaknesses of her identification, i.e., by eliciting testimony that she had drunk at least one beer, she had

never seen the two men at the bar before that night, the lighting in the bar was "not really bright," the area where the two men walked was dark in some areas, and the assailant disappeared for up to ten minutes after the assault before she saw him again. Barlow's counsel also argued at length in closing that "[e]yewitness evidence is one of the weakest forms of evidence," and argued that the jury could find as a matter of common sense, "eyewitnesses, they are certain, but they're still wrong, sometimes . . . confidence does not equal correctness, and that she has the right guy."

¶25   Accordingly, based on this record, the court's refusal to modify the standard jury instruction on eyewitness identification did not violate Barlow's due process right to a fair trial.

III.  **CONCLUSION**

¶26   For the foregoing reasons, we affirm Barlow's convictions and sentences, and the revocation of his probation.

